JS-6

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN NAYLOR, as the Chapter 7 bankruptcy trustee for Elite Aerospace Group, Inc., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL INSURANCE COMPANY; ACRISURE OF CALIFORNIA, LLC dba Brakke-Schafnitz Insurance Brokers, LLC; BRAKKE-SCHAFNITZ INSURANCE BROKERS, LLC; RICHARD STEVEN BRAKKE; and DOES 1 through 10, <br><br> Defendants. | Case No. 8:22-cv-02280-JWH-ADS <br><br> **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [ECF No. 17]** |

1    Before the Court is the motion of Plaintiff Karen Naylor, as the Chapter 7

2    bankruptcy trustee for Debtor Elite Aerospace Group, Inc. ("Elite"), to remand

3    the instant action to Orange County Superior Court.[1]  The Court finds this

4    matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78;

5    L.R. 7-15.  After considering the papers filed in support and in opposition,[2] the

6    Court orders that the Motion is **GRANTED**, for the reasons set forth herein.

### I.  BACKGROUND

8    Before it filed its bankruptcy petition, Elite designed, engineered, and

9    manufactured aircraft components for the aerospace industry.[3]  Elite operated a

10   large factory in Irvine, California, which housed millions of dollars-worth of

11   equipment, including numerous computer numerical control machines.[4]

12   In early 2021, Elite purchased an insurance policy (the "Policy") from

13   Defendant Federal Insurance Company ("Federal Insurance").  Elite claims

14   that through the Policy, Federal Insurance provided Elite with personal property

15   and business income coverage.[5]  Elite purchased the Policy through one of

16   Federal Insurance's appointed agents, Defendant Richard Brakke or Defendant

17   Acrisure of California ("Acrisure"), who also acted as Elite's insurance broker.[6]

18   Elite claims that Federal Insurance issued the Policy with little to no

19   underwriting.[7]

---

[1]      Pl.'s Mot. to Remand (the "Motion") [ECF No. 17].

[2]      The Court considered the following papers:  (1) Compl. (the "Complaint") [ECF No. 1-1 at 6-24]; (2) Motion (including its attachments); (3) Defs.' Opp'n to the Motion (the "Brakke Opposition") [ECF No. 19]; (4) Def.'s Opp'n to the Motion (the "Federal Insurance Opposition") [ECF No. 20]; (5) Pl.'s Reply to the Federal Insurance Opposition [ECF No. 21]; and (6) Pl.'s Reply to the Brakke Opposition (the "Brakke Reply") [ECF No. 22].

[3]      Complaint ¶ 12.

[4]      *Id.*

[5]      *Id.* at ¶ 34.

[6]      *Id.* at ¶¶ 16, 17, & 18-34.

[7]      *Id.* at ¶¶ 15-34.

In April 2021, a fire broke out at Elite's main factory, damaging its equipment and operations.[8]  Elite made a claim for the losses in accordance with the Policy.[9]  Federal Insurance denied Elite's claim and attempted to withdraw the Policy.[10]  Without funding or the ability to operate, Elite shut down its factory within months of the fire and filed a Chapter 11 bankruptcy petition. The bankruptcy court subsequently converted Elite's case to Chapter 7,[11] and Naylor was appointed as Elite's Chapter 7 trustee.[12]

In May 2022, Federal Insurance justified denying Elite's claim by alleging that Elite intentionally misrepresented and concealed material facts during its application process, and Federal Insurance rescinded the Policy on that basis.[13] In November 2022, Naylor filed this lawsuit against Defendants Federal Insurance, Brakke, Acrisure, and Brakke-Shafnitz Insurance Brokers in Orange County Superior Court, claiming that Defendants failed to use reasonable care in procuring the policy for Elite.[14]  Defendants removed the action to this Court in December 2022, citing 28 U.S.C. § 1334 as the basis for federal question jurisdiction.[15]  Naylor filed the instant Motion to remand in February 2023, and it is fully briefed.

## II.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction.  Accordingly, "[t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In every federal case, the

---

[8]      *Id.* at ¶ 35.
[9]      *Id.* at ¶ 36.
[10]     *Id.* at ¶¶ 37-49.
[11]     *Id.* at ¶¶ 41-45.
[12]     *Id.*
[13]     *Id.* at ¶¶ 46-69.
[14]     Motion 3:4-10.
[15]     *Id.* at 3:11-13.

1   basis for federal jurisdiction must appear affirmatively from the record.  *See*

2   *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).  "The right of

3   removal is entirely a creature of statute and a suit commenced in a state court

4   must remain there until cause is shown for its transfer under some act of

5   Congress."  *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (internal

6   quotation marks omitted).  Where Congress has acted to create a right of

7   removal, those statutes, unless otherwise stated, are strictly construed against

8   removal jurisdiction.  *See id.*

9         To remove an action to federal court under 28 U.S.C. § 1441, the

10   removing defendant "must demonstrate that original subject-matter jurisdiction

11   lies in the federal courts."  *Syngenta*, 537 U.S. at 33.  However, the right to

12   remove is not absolute, even where original jurisdiction exists.  In other words,

13   the removing defendant bears the burden of establishing that removal is proper.

14   *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (noting

15   the "longstanding, near-canonical rule that the burden on removal rests with the

16   removing defendant"); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)

17   ("[t]he strong presumption against removal jurisdiction means that the

18   defendant always has the burden of establishing that removal is proper"

19   (quotation marks omitted)).  Any doubts regarding the existence of subject

20   matter jurisdiction must be resolved in favor of remand.  *See id.* ("[f]ederal

21   jurisdiction must be rejected if there is any doubt as to the right of removal in the

22   first instance").

23                              **III.  DISCUSSION**

24   **A.     Equitable Remand and the 14-Factor Test**

25         Naylor seeks equitable remand of the instant action and argues that

26   Defendants' removal under 28 U.S.C. § 1334 was improper, or at least that

27

28

equitable remand is warranted under 28 U.S.C. § 1452(b).[16]  As the basis of Defendants' removal under federal question jurisdiction, 28 U.S.C. § 1334 states:

> (a)    Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b)    Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

All parties agree that motions to remand bankruptcy-related cases are informed by the following 14-factor balancing test, which is set forth in *In re Cedar Funding, Inc.*, 419 B.R. 807, 821 n.18 (B.A.P. 9th Cir. 2009):

> (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood

---

[16]    *Id.* at 1:11-15.

1    that the commencement of the proceeding in bankruptcy court

2    involves forum shopping by one of the parties; (11) the existence of a

3    right to a jury trial; (12) the presence in the proceeding of nondebtor

4    parties; (13) comity; and (14) the possibility of prejudice to other

5    parties in the action.

6  Furthermore, the statute itself provides courts with broad authority to remand a

7  previously removed claim for relief "on any equitable ground." *Id.* at 820

8  (citing 28 U.S.C. § 1452(b)).

9         While this Court is more than capable of embarking upon the lengthy

10  journey of weighing the 14 factors articulated above, there is perhaps a more

11  direct and constitutionally grounded basis for remand.  *See Bendix Autolite Corp.*

12  *v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 897 (1988) (equating unwieldy

13  balancing tests to "judging whether a particular line is longer than a particular

14  rock is heavy") (Scalia, J., concurring).  Because Defendants' removal of the

15  action was based solely upon 28 U.S.C. § 1334, and Defendants merely speculate

16  that pending or unfiled claims may require relief from stay under 11 U.S.C.

17  § 362, the Court will turn to this issue of subject matter jurisdiction for this

18  dispute.

19  **B.    Standing and Ripeness**

20         As the parties invoking federal jurisdiction, Defendants bear the burden of

21  demonstrating that they have standing.  *See TransUnion LLC v. Ramirez*, 141

22  S. Ct. 2190, 2207 (2021).  Article III of the Constitution confines federal power

23  to the resolution of "Cases" and "Controversies," and those requirements

24  demand that a party has a personal stake in the case.  *Id.* at 2203 (citation

25  omitted).  "At an 'irreducible constitutional minimum,' standing requires the

26  party asserting the existence of federal court jurisdiction to establish three

27  elements:  (1) an injury in fact that is (a) concrete and particularized and

28  (b) actual or imminent; (2) causation; and (3) a likelihood that a favorable

1    decision will redress the injury." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th

2    Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).

3         Confining federal jurisdiction to actual "Cases" or "Controversies"

4    ensures that "federal courts do not adjudicate hypothetical or abstract disputes"

5    and "do not issue advisory opinions." *Transunion*, 141 S. Ct. at 2203.  Relating

6    to the "Cases" or "Controversies" mandate, "[t]he ripeness doctrine is drawn

7    both from Article III limitations on judicial power and from prudential reasons

8    for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of*

9    *Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted).

10        The ripeness doctrine is essentially a question of timing; it is designed to

11   separate matters that are speculative and premature from those cases that are

12   appropriate for federal action.  *See Wolfson*, 616 F.3d at 1057 (citations and

13   quotations omitted).  "The ripeness inquiry contains both a constitutional and a

14   prudential component," *Portman v. Cnty. Of Santa Clara*, 995 F.2d 898, 902

15   (9th Cir. 1993), and the constitutional component of ripeness overlaps with the

16   "injury in fact" analysis for Article III standing, *see Thomas v. Anchorage Equal*

17   *Rights Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir. 2000) (*en banc*).  "Whether

18   framed as an issue of standing or ripeness, the inquiry is largely the same:

19   whether the issues presented are 'definite and concrete, not hypothetical or

20   abstract.'"  *Wolfson*, 616 F.3d at 1058 (citing *Thomas*, 220 F.3d at 1139).

21   Because Brakke and Federal Insurance filed separate oppositions, and the two

22   parties may be in an adversarial posture regarding potential crossclaims, the

23   Court will address each of their Oppositions in turn.

24        **1.**     **Brakke's Opposition**

25        Brakke outlines the main thrust of his Opposition in his introduction,

26   stating that Naylor's Complaint against Federal Insurance may implicate

27   Brakke's procurement of the Policy for Elite and that "[i]f Federal makes claims

28   against the Brakke Parties . . . for any responsibility Federal claims that the

Brakke Parties had for Elite's alleged fraud upon Federal, the Brakke Parties will

likely . . . assert equitable indemnity and fraud claims against Elite."[17]  Brakke

assumes that these claims "will likely require" relief from the 11 U.S.C. § 362

stay in Elite's underlying bankruptcy case—*In re Elite Aerospace Group, Inc.*,

Case No. 8:21-bk-12231-TA (Bankr. C.D. Cal.) (the "Elite Bankruptcy Case").[18]

Next, Brakke lists a multitude of speculative claims and issues that may

potentially invoke federal jurisdiction under 11 U.S.C. § 362:

- "Federal's *likely* counterclaims (in the Federal Courts) or cross-claims (in the Superior Court) for fraud in the inducement of the insurance of the Federal Policy and related policy cancelation and / or recession claims."[19]

- "*If* Federal asserts cross-claims against the Brakke Parties in the Federal Courts or in the Superior Court, the Brakke Parties are *likely* to assert resulting equitable indemnity and fraud claims against Elite for the information that Elite provided . . . ."[20]

- "In light of these issues, *it is predictable* that the Federal Courts will be called upon to consider . . . "[w]hether the 11 U.S.C.A. § 362 bankruptcy stay applies . . . [or] [w]hether relief from the 11 U.S.C.A. § 362 bankruptcy stay is warranted to allow these claims against Elite . . . [or] [w]hether any damages caused by Elite's fraudulent conduct are dischargeable in its bankruptcy proceeding."[21]

---

[17]   *Id.* at 2:7-11.
[18]   *Id.* at 2:11-16.
[19]   *Id.* at 7:6-8 (emphasis added).
[20]   *Id.* at 7:15-19 (emphasis added).
[21]   *Id.* at 7:22-8:2 (emphasis added).

-8-

- "Based on the Elite Complaint's allegations, it is ***probable*** that Federal will seek cancelation or recession of the Federal Policy, or juridical confirmation of cancelation or recession."[22]
- "Federal will ***likely*** be required to seek relief from the bankruptcy stay to pursue that relief in the Superior Court."[23]
- "Federal ***could*** elect to seek cancelation or rescission of the Federal Policy in the Federal Courts."[24]
- "Moreover, ***if*** Federal asserts cross-claims against the Brakke Parties . . . it is ***probable*** that the Brakke Parties will assert claims against Elite . . . ."[25]
- "There is no sound reason to require the parties to litigate the same or related issues in both the Superior Court and the Federal Courts, which is the ***probable and predictable*** consequence of granting the [Motion]."[26]

Although the specter of federal jurisdiction may be lurking behind Brakke's parade of speculative horribles, it is apparent from the Opposition that none of those crossclaims or counterclaims has been filed.[27]  It is also notable that, in its Opposition, Federal Insurance did not mention any potential claims that it was considering filing against Brakke.[28]  Brakke's anticipation of crossclaims or counterclaims—that may require adjudication by a bankruptcy court of the applicability of 11 U.S.C. § 362—is insufficient to warrant federal jurisdiction, and Defendants fail to cite any legal authority supporting their argument.

---

[22]  *Id.* at 8:15-17 (emphasis added).
[23]  *Id.* at 8:17-19 (emphasis added).
[24]  *Id.* at 8:21-22 (emphasis added).
[25]  *Id.* at 9:1-5 (emphasis added).
[26]  *Id.* at 10:9-11:3 (emphasis added).
[27]  Brakke Reply 1:22-23.
[28]  *Id.* at 1:23-27.

1    If anything, Brakke's theory of removal serves as a bankruptcy parallel of
2    defendants inaptly raising federal question jurisdiction on the ground of an
3    anticipated affirmative defense.  It is hornbook law that "a case may not be
4    removed to federal court on the basis of a federal defense, . . . even if the defense
5    is anticipated in the plaintiff's complaint, and even if both parties admit that the
6    defense is the only question truly at issue in the case." *Franchise Tax Bd. Of*
7    *California v. Construction Laborers Vacation Trust for S. California,* 463 U.S. 1, 14
8    (1983).  Defendants' removal pursuant to federal question jurisdiction under 28
9    U.S.C. § 1334 "requires that a dispute be ripe and present an actual controversy.
10   Those standard doctrines of federal jurisprudence apply in bankruptcy." *In re*
11   *Menk*, 241 B.R. 896, 905 (B.A.P. 9th Cir. 1999).

12   Here, although this Court has "original but not exclusive jurisdiction of
13   all civil proceedings . . . arising in or related to cases under title 11," 28 U.S.C.
14   § 1334(b), there are no existing or pending adversary actions in the Elite
15   Bankruptcy Case that militate against remand in the instant action.

16   **2.      Federal Insurance's Opposition**

17   Federal Insurance's Opposition is roughly nine-pages in substance, and it
18   does not raise any of the speculative counterclaims or crossclaims assumed by
19   Brakke's Opposition.  Federal Insurance asserts that this Court has "related to"
20   jurisdiction under 28 U.S.C. § 1334(b) and that it "does not argue that the
21   matter should be transferred to a bankruptcy court, but rather maintains that the
22   matter remains within the current district court."[29]

23   Federal Insurance opposes remand by arguing that the recoveries that
24   Naylor seeks through her Complaint would be paid to the creditors in the
25   pending Chapter 7 bankruptcy case and that it would be more efficient to

26

27

---

[29]      Federal Insurance Opposition 7:14-20.

-10-

maintain the action in federal court.[30]  But Federal Insurance does not discuss with any depth the underlying Elite Bankruptcy Case, nor does Federal Insurance mention any ongoing efforts by Elite's creditors or even who the creditors are in the Elite Bankruptcy Case.

Because Federal Insurance fails to identify precisely what issues in the underlying bankruptcy case necessitate federal jurisdiction over Naylor's state-court action, the Court concludes that equitable remand is appropriate here:  the issue of equitable remand is left to the district court's discretion, and it may be granted under "any equitable ground." *In re Roman Cath. Bishop of San Diego*, 374 B.R. 756, 762 (Bankr. S.D. Cal. 2007).  The Court **GRANTS** Naylor's instant Motion to remand.

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Naylor's Motion to remand is **GRANTED**.

2. This case is **REMANDED** to Orange County Superior Court.

3. The pending motion to dismiss, filed by Defendants Acrisure, Brakke, and Brakke-Schafnitz Insurance Brokers, LLC, is **DENIED as moot**.

4. The hearings on the Motion to remand and the pending motion to dismiss, scheduled for April 14, 2023, are **VACATED**.

**IT IS SO ORDERED.**

Dated: April 3, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[30]     *Id.* at 9:10-14.

-11-